# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| HUMBERTO M. ARMENDARIZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 13-0592-CV-W-ODS-P |
| | ) |
| IAN WALLACE, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Farmington Correctional Center in Farmington, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 convictions and sentences for second-degree assault and armed criminal action, which were entered in the Circuit Court of Buchanan County, Missouri. Petitioner's conviction was affirmed on direct appeal (Respondent's Exhibits 10-4 and 10-5), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibits 10-9 and 10-10). Petitioner raises five (5) grounds for relief, asserting that: (1) he suffered a manifest injustice when he was sentenced as a prior and persistent felony offender; (2) he was subjected to double jeopardy because both counts require the same elements to be proved; (3) trial counsel was ineffective for failing to object properly to the adverse inference in prosecutor's closing argument; (4) trial counsel was ineffective for failing to investigate and present a defense at trial; and (5) trial counsel was ineffective for failing to investigate and present mitigating evidence at sentencing. Respondent contends that Grounds 1-4 are partially procedurally defaulted and that Ground 5 is

without merit.

## FACTUAL BACKGROUND

In affirming the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals, Western District, set forth the following facts:

> On September 7, 2007, the victim, Guillermo Sanchez, was at Holt's Bar in St. Joseph drinking with friends, including a man named Sotello and the appellant, Armendariz, whom the victim knew only as "Smiley." Sotello told the victim that he knew a way of making money that involved gay men. The victim gave Sotello the phone number of a gay man with whom he worked, and Sotello called the man. Later, Sotello and the victim left the bar for a time. When they returned, they found that their friends had left. Sotello left to find Armendariz, and the victim went with him.
>
> The two men went to Armendariz's duplex. They found Hugo, Armendariz's roommate, but Hugo did not know where Armendariz was. Sotello and the victim continued to talk to Hugo outside, and a few minutes later, Armendariz returned home. As Armendariz was walking up to his house, the victim touched on his shoulder and said, "Hey, where have you been?" Armendariz took out a knife and put it to the victim's neck. He held the knife to the victim's neck in silence for ten to fifteen seconds and then told him, "Don't touch me again." Armendariz then put the knife back in his pocket and told Sotello, "Hey, let's go."
>
> Armendariz and Sotello left in Sotello's car. The victim asked Hugo why Armendariz had pulled a knife on him, and Hugo told him that he would speak to Armendariz and try to calm him down.
>
> The victim knew the man, Jose, that lived in the duplex next door, so he went there to ask for a ride home. He waited in Jose's kitchen while Jose finished his dinner with his family.
>
> After a few minutes, Armendariz knocked on Jose's kitchen door, which was on the back side of the duplex. Armendariz told the victim, "Hey, come here." Assuming that Hugo had talked to Armendariz and that Armendariz was there to apologize, the victim followed him out the door and down into Armendariz's basement. Armendariz was drinking a bottle of beer, and when they got to the basement, he threw the bottle at the victim's feet and pulled the knife out again. The victim ran up the stairs toward Jose's kitchen door. As the victim tried to open the door, Armendariz stabbed him in his side. The victim ran into Jose's kitchen, and Armendariz followed him trying to stab him again. Jose was in

the kitchen with his mother and father, and he stopped Armendariz. When Armendariz saw the blood on the victim, he ran out the back door.

Hugo and his wife, Maria, began to drive the victim to the hospital, but because the victim was bleeding heavily, Hugo drove him to a fire station that was nearby. Paramedics at the fire station attended to the victim and called for an ambulance to take him to the hospital.

At the hospital, the victim immediately underwent surgery. The knife had punctured the abdominal wall musculature and left a gaping, two-inch wound that required the surgeon to open the victim's abdomen to check for injuries to internal organs and major blood vessels. The surgeon did not find such damage, but the victim did lose a significant amount of blood. The surgeon opined that the wound was life threatening and that it was caused by a lot of force. The victim was in the hospital for ten days. He still had complications from the stabbing at the time of trial and had been told by his doctors that he might need another surgery.

The victim identified Armendariz in a photo lineup and at trial as the man who stabbed him.

Armendariz later told Chantali Corona, Jose's daughter, that he stabbed the victim because the victim grabbed Armendariz's "ass."

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1). Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **PROCEDURALLY DEFAULTED GROUNDS 1-4**

Respondent argues that, because petitioner failed to raise a number of claims either on direct appeal or on appeal of petitioner's post-conviction proceedings, petitioner is procedurally

3

barred from presenting them in his federal habeas corpus petition. Petitioner procedurally defaulted Ground One by failing to assert it in his motion for new trial and by failing to include it in either his direct or post-conviction appeal. Although petitioner attempted to assert Ground Two in his pro se motion for post-conviction relief, he failed to assert it in a motion for new trial, his direct appeal, or his post-conviction appeal. Grounds Three and Four were defaulted when petitioner failed to include those claims in his pro se motion for post-conviction relief, in his amended motion, as well as in his direct and post-conviction appeals.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id; see also Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998).

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

If petitioner contends that ineffective assistance of Rule 29.15 appellate counsel caused his state procedural default of Grounds Two, Three, and Four, claims of ineffective assistance of counsel must have been independently presented in a timely manner to the state courts in order to be used to show the alleged cause for state procedural default. Edwards v. Carpenter, 529 U.S.

4

446, 451 (2000). Because petitioner failed properly to present the alleged ineffectiveness of Rule 29.15 appellate counsel concerning Grounds One, Two, and Four to the state courts, he has failed to demonstrate legally sufficient cause for his default. Although the United States Supreme Court recognized that ineffective assistance of post-conviction counsel could constitute cause for the failure to raise a claim in a post-conviction motion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), Martinez did not change the rule that ineffective assistance of post-conviction appellate counsel could not constitute cause for state procedural default unless it has been presented in the state courts. Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012).

As to petitioner's procedural default of Ground 1 (that the trial court committed error by finding him to be a prior and persistent offender), petitioner contends that post-conviction counsel was ineffective for failing to include a claim that direct appeal counsel was ineffective for failing to raise this claim on direct appeal or in the motion for new trial. Petitioner cannot meet the standard set forth in Martinez, supra, that this claim is "substantial" enough to constitute cause for his state procedural default. Neither trial counsel nor appellate counsel is ineffective for failing to raise every non-frivolous issue in a motion for new trial or on appeal in order to focus on issues more likely to prevail. Smith v. Murray, 477 U.S. 527, 536 (1986); Jones v. Barnes, 463 U.S. 745, 751-52 (1983); Blair v. Armontrout, 976 F.2d 1130, 1139 (8th Cir. 1992), cert. denied, 508 U.S. 916 (1993). "To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal." Parker v. Bowersox, 94 F.3d 458, 462 (8th Cir. 1996), cert. denied, 520 U.S. 1171 (1997).

To obtain relief for a claim of ineffective assistance of counsel, petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was

prejudiced by that deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Parker v. Bowersox, 94 F.3d at 461. Petitioner fails to establish either of the Strickland prongs. As to the merits of Ground 1, petitioner does not contend that he is not a prior and persistent offender, but merely contends that the trial court failed to determine the issue before the jury returned its verdict. Doc. No. 13, p. 25. The transcript indicates that the state adduced evidence that petitioner was a prior and persistent offender before trial even though the trial judge did not memorialize his finding of prior and persistent offender until after the jury's verdict. As respondent argues, petitioner's claim is not "substantial" enough to satisfy the Martinez standard and, even if it were "substantial" enough, Martinez is an equitable rule, 132 S. Ct. at 1319, the benefits to which petitioner is not entitled. Doc. No. 22, pp. 4-5.

Petitioner also has failed to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006). As a result, Grounds One, Two, Three, and Four are procedurally defaulted and will be denied.

## **GROUND 5 – INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

Petitioner's remaining claim in Ground Five is that petitioner's trial counsel was ineffective for failing to investigate and to present mitigating evidence during the sentence hearing from petitioner's brother, cousin, employer's, and his military record. Doc. No. 1, pp. 26-29.

In affirming the denial of petitioner's motion for post-conviction relief, the Missouri Court of Appeals, Western District, determined that counsel was not ineffective as follows:

6

In his sole point on appeal, Armendariz asserts that the motion court erred in denying his Rule 29.15 motion, because his trial counsel was ineffective in failing to investigate and present mitigating evidence at his sentencing hearing. Armendariz focuses on three particular categories of evidence which he argues trial counsel should have offered: (1) his military records, indicating that he was honorably discharged; (2) testimony from his employers; (3) testimony from Armendariz's brother and cousin.

.     .     .     .     .

With respect to his military records, Armendariz first asserts that the motion court erred by failing to explicitly address his military records in its judgment denying post-conviction relief. The Missouri Supreme Court has held that, although Rule 29.15(j) requires a motion court to make express findings on all contested issues, a movant must file a motion to amend the judgment under Rule 78.07(c) to preserve a claim that the motion court erred by failing to make the required findings. Johnson v. State, 388 S.W.3d 159, 168 (Mo. banc 2012); see also Gerlt v. State, 339 S.W.3d 578, 585 (Mo. App. W.D. 2011). Here, Armendariz concedes that he did not file a motion requesting that the motion court amend its judgment to include findings of fact and conclusions of law regarding the military records as required by Rule 78.07(c). Accordingly, Armendariz waived his argument that the judgment must be reversed based on the trial court's failure to explicitly address his claim concerning his military records.

Although the motion court did not expressly address trial counsel's failure to present Armendariz's military records, we presume that it concluded that this evidence would not have altered the outcome of Armendariz's sentencing, given its statements concerning other character evidence Armendariz has identified. This conclusion is not clearly erroneous with respect to the military records. The records Armendariz presented to the motion court reflect that his military service was exceedingly brief (less than four months), and terminated more than thirty years ago, in 1977. It preceded his extensive criminal history as reported in the SAR, which commenced in 1978 with his convictions for attempted murder and felony burglary. Further, Armendariz's honorable discharge from the U.S. Army was reported in the SAR; the SAR also notes (based on Armendariz's self-reporting) that he had at least three conduct violations during his brief military service (which might explain his trainee discharge after less than four months of service). Given the brevity of Armendariz's military service, its remoteness in time, his conduct violations while in the service, and the commencement of his extensive criminal history shortly after his discharge, it was not clearly erroneous for the trial court to conclude that his military records would have had no effect on the outcome of his sentencing.

Armendariz next claims that the trial court erred in denying his motion

because his attorney failed to present testimony from his employers. Armendariz did not present sufficient evidence at the motion hearing, however, to substantiate this claim.

> For the movant to establish that his trial counsel was ineffective for failure to call a witness, he must show that the decision involved something other than reasonable trial strategy; that the witness could have been located through reasonable investigation; that the witness would have testified; and that the witness's testimony would have provided the defendant with a viable defense.

State v. Gilpin, 954 S.W.2d 570, 576 (Mo. App. W.D. 1997) (citation and internal quotation marks omitted).

Armendariz offered little to no evidence at the evidentiary hearing concerning the *identity* of potential employer-witnesses, or concerning the likely *content* of their testimony. In his deposition, Armendariz was asked if he could give specific names of people who would have testified on his behalf at his sentencing. In response, he gave the name of his cousin and brother, but in regard to employers, he stated only: "my friend the Director of Human Resources at Triumph where I worked at and the manager at Panda Express and my coworkers." Armendariz never identified a potential employer-witness by name. Armendariz did testify, generally, that he wanted witnesses to testify on his behalf at sentencing so that "they could say something good" about him, and "humanize him"; however, it is unclear from Armendariz's deposition whether he believed that the testimony of his cousin and brother, or the testimony of his employers, would perform this "humanizing" function. Armendariz also failed to present any evidence that his employers would have been willing to testify on his behalf, if they had been called. Given the almost complete absence of evidence concerning proposed employer-witnesses (their identity, the likely content of their testimony, or their willingness to testify), Armendariz failed to prove that his attorney was ineffective for failing to call such witnesses, or that he was prejudiced by the failure.

Even if this were not the case, the motion court specifically found that counsel's failure to call employer witnesses to testify was reasonable, because the SAR already reflected that Armendariz was employed at two jobs and was paying child support, and therefore, any testimony from his employers would have amounted to cumulative evidence on an issue which was not in dispute. "Failure to present evidence that is cumulative to that presented at trial does not constitute ineffective assistance of counsel." McLaughlin v. State, 378 S.W.3d 328, 343 (Mo. banc 2012) (quoting Forrest v. State, 290 S.W.3d 704, 709 (Mo. banc 2009)).

Armendariz argues that it was clear from his testimony that his employers would have done more than simply verify his employment; he argues that these

witnesses would have testified "about who he was as an employee." The evidence presented at the post-conviction evidentiary hearing provides no support for this argument, however. In his deposition testimony, Armendariz did not indicate that his employers would have provided any specific evidence concerning his conduct as an employee: for example, he never suggested that the unnamed witnesses would have testified that he was a hard worker, or that he got along well with others, or that he was punctual or strictly followed the rules. He only indicated that he hoped his sentencing witnesses would "humanize" him, and "say something good." Without any further indication of what these unnamed employers would have testified, we find that Armendariz has failed to show that testimony from his employers would have benefitted him in any way, or that it would have provided any information not already contained in his SAR. The motion court was free to infer that any testimony from Armendariz's employers would have established, at most, what the court already knew: that Armendariz was working two jobs and that child support payments were being deducted from his paychecks. The trial court did not err in finding that the "employer" evidence was cumulative.

Finally, Armendariz argues that the motion court erred in finding that Armendariz was not prejudiced by his counsel's failure to call his brother and cousin as witnesses at his sentencing hearing. We disagree.

To establish ineffective assistance of counsel, Armendariz was required to prove that, if his brother and cousin had been called to testify at his sentencing hearing, there is a reasonable probability that the outcome of the proceeding would have been different. This is a particularly difficult burden to meet with respect to witnesses omitted from a sentencing proceeding. As we explained in Cherco:

> We caution that our conceptual conclusion that the Strickland prejudice prong permits a defendant to argue that the outcome of a sentencing proceeding would have been different but for counsel's deficient performance, without requesting vacation of a conviction, is unlikely to affect the disposition of post-conviction motions asserting that but for trial counsel's failure to call character witnesses, a sentence would have been ameliorated. In fact, it is difficult to envision a scenario where the weighty burden of establishing prejudice can be sustained by such a hypothetical supposition given the indeterminate nature of sentencing.

309 S.W.3d at 830-31.

Armendariz presented the depositions of his brother and cousin, indicating their willingness to testify on his behalf, and specifying what their testimony would have been. Armendariz argues that the motion court's finding that the omission of this evidence was not prejudicial, without considering it in conjunction with his

9

military records and testimony from his employer, was plain error. Hutchison v. State, 150 S.W.3d 292, 306 (Mo. banc 2004) ("[t]he question is whether, when all the mitigation evidence is added together, is there a reasonable probability that the outcome would have been different?"). However, as discussed above, Armendariz failed to establish that counsel was ineffective for failing to present evidence of his military records, or from other prior employers, and therefore, the only evidence available to establish prejudice is the testimony of Armendariz's brother and cousin.

As noted above, the motion court, which was also the sentencing court, concluded that there was no possibility that the testimony of Armendariz's brother and cousin would have altered the outcome of Armendariz's sentencing; in drawing this conclusion, the motion court specifically referred to the serious nature of Armendariz's offense, his extensive criminal history (including multiple felony convictions and convictions for attempted murder and assault), and his multiple parole revocations. This finding was not clearly erroneous. Armendariz chased down and stabbed an unarmed victim with a knife, causing life-threatening harm. He had an extensive criminal history dating back more than thirty years. At his sentencing hearing, the trial court stated:

> You may not be entirely bad. That may be true. I don't doubt that. You've probably got some redeeming values – or redeeming value to other people and do good things perhaps by working. Maybe you're a good worker. ***However, you're here to be judged based on your criminal activity.***

Tr. 603-04 (emphasis added). It is apparent from the trial court's statement at the sentencing hearing that it did consider Armendariz's potentially redeeming qualities; however, it disregarded Armendariz's redeeming attributes, because it found that those factors were outweighed by the depraved and violent nature of his crime.

Here, the circuit judge deciding a post-conviction relief motion was also the sentencing judge. Given its unique vantage point, we cannot hold that the motion court clearly erred in concluding that further evidence of Armendariz's good character would have been unlikely to counter-balance the weight the court placed on the viciousness of Armendariz's crime.

Respondent's Exhibit 10, pp. 5, 7-12.

In order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective

standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Here, the Missouri Court of Appeals, Western District, upheld the motion court's finding that petitioner's trial counsel made a reasonable decision to not present mitigating evidence during the sentencing hearing. Such strategic decisions are virtually unchallengeable, especially under 28 U.S.C. § 2254. Strickland, 466 U.S. at 690-91; Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009); see also Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury.").

Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), petitioner's claim of ineffective assistance of trial counsel with respect to his attorney not presenting mitigating evidence of his military records, his

employers, and his brother and cousin will be denied.

## **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

        /s/ Ortrie D. Smith
        ORTRIE D. SMITH
        UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: May 12, 2014.